Lisa M. McRAE, Plaintiff
and Appellant,

v.

Steven H. CARBNO, Defendant
and Appellee.

Civ. No. 11313.

Supreme Court of North Dakota.

April 16, 1987.

Donald R. Becker, Fargo, for plaintiff and appellant.

C. Charles Chinquist, Fargo, for defendant and appellee.

GIERKE, Justice.

Lisa McRae appeals from a district court order denying her motion to change the residence of her daughter, Rachel. We affirm.

Lisa and the defendant Steven Carbno, Rachel's father, were divorced in 1985, and Lisa was awarded sole custody of Rachel with reasonable visitation rights for Steven. Since that time Steven has fully exercised his visitation rights which includes having Rachel stay with him on alternating weekends.

In a case such as this where the noncustodial parent has been given and exercises visitation rights, the custodial parent must obtain a court order to change the child's residence. Section 14–09–07, N.D.C.C. Lisa requested court approval to change Rachel's residence to Spokane, Washington. The trial court, concluding that Lisa failed to meet her burden of showing that it would be in Rachel's best interests to change residence, denied the motion.

Following their divorce Lisa and Steven have both resided in Fargo. At the time of these proceedings Lisa was employed as an assistant warehouse foreman. Lisa asserts that she has secured a position with her sister's residential house cleaning service in Spokane. There she would earn approximately the same pay as she currently does in Fargo, but the new job, Lisa asserts, would provide her greater flexibility in working hours with the opportunity to spend more time with Rachel. Lisa also asserts that Rachel's maternal grandparents have moved to Spokane and have offered to pay the cost of Lisa and Rachel's move from Fargo to Spokane. Lisa contends that by moving to Spokane she and Rachel will have a more desirable lifestyle with greater opportunities. Steven resists Lisa's attempt to relocate Rachel to another state, because such a move would make

it impractical for him to continue an ongoing personal relationship with Rachel of the type that is now fostered by the weekly visitation privileges. Steven asserts that the move would negatively impact the good father/daughter relationship that Rachel and he enjoy.

■ Lisa asserts that the trial court's determination that she failed to prove that the requested change of residence was in Rachel's best interests is clearly erroneous. The trial court found that Steven has "fully exercised" his visitation privileges and that Steven and Rachel have a "healthy relationship." The trial court obviously agreed with Steven's contention that the change of residence would negatively impact their father/daughter relationship and concluded that "given the circumstances of this case" Lisa failed to meet her burden of showing that the change of residence is in Rachel's best interests. We are not convinced that the trial court made a mistake and consequently we will not set aside the court's determination. Rule 52(a), N.D.R.Civ.P.

Relying upon *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), Lisa asserts that the trial court's denial of her motion constituted a violation of her constitutional right to travel. In *Shapiro*, the High Court held that the denial of welfare payments based upon an applicant's inability to meet a durational residency requirement unconstitutionally penalized the applicant's constitutional right to travel. However, in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court refused to extend the *Shapiro* rationale to strike down a durational residency requirement for obtaining a divorce in Iowa. In so holding the Court referred to domestic relations cases as "an area that has long been regarded as a virtually exclusive province of the States." *Sosna*, 419 U.S. at 404, 95 S.Ct. at 559, 42 L.Ed.2d at 543.

■ Several state courts have determined that limitations upon the custodial parent's ability to change the child's residence to another state do not violate the custodial parent's constitutional right to travel. *Ziegler v. Ziegler*, 107 Idaho 527,

691 P.2d 773 (App.1985); *Carlson v. Carlson*, 8 Kan.App.2d, 564, 661 P.2d 833 (1983); *In re Marriage of Manuele*, 107 Ill.App.3d 1090, 63 Ill.Dec. 760, 438 N.E.2d 691 (1982). Lisa has referred to no authority nor advocated any rationale which would persuade us to apply the *Shapiro* analysis in this case to overturn the trial court's order.

■ Lisa invites us to overrule our decision in *Olson v. Olson*, 361 N.W.2d 249 (N.D.1985), in which we concluded that in this state there is not a presumption in favor of the custodial parent's decision to change the child's residence. We decline the invitation. In *Olson, supra,* we concluded that a presumption in favor of the custodial parent's decision to change the child's residence would be inconsistent with our state law. We reiterate and reaffirm our position on this issue as stated in *Olson, supra,* 361 N.W.2d at 252:

"We believe the ... presumption is inconsistent with [Section 14–09–07].... At least in cases such as this where the noncustodial parent has been given and has exercised visitation rights, the custodial parent has the burden of securing an order for a change of residence of the child to another state by demonstrating that it is in the best interests of the child to do so. *See, Burich v. Burich*, 314 N.W.2d 82 (N.D.1981). In our state, there is a legally recognizable right of visitation between a child and the noncustodial parent which is considered to be in the best interests of the child. *See* Subsection 14–05–22(2), N.D.C.C.; *Gardebring v. Rizzo*, 269 N.W.2d 104 (N.D. 1978).

"The statutory recognition of visitation rights between a child and the noncustodial parent is consistent with placing the burden upon the custodial parent to show that moving the child to another state is in the child's best interest. We conclude that there is no presumption that a custodial parent's decision to change the child's residence to another state is in the child's best interests. We are unpersuaded that it would be consistent with our statutes or otherwise appropriate to

adopt such a presumption, and we refuse to do so."

The dissenting justices accord far less importance to the relationship of noncustodial parent and child than the trial court and would permit a move that concededly has a negative impact on that relationship so long as the custodial parent articulates "legitimate reasons" for the move. We do not believe that the legislature enacted Section 14–09–07, N.D.C.C., with the intent of accomplishing little more than placing a ministerial responsibility upon the courts in signing change of residence orders for the asking. That is the ultimate consequence of the dissenting justices' interpretation of the provision for it would be seldom, indeed, that a custodial parent could not articulate anticipated or hoped-for advantages at the location of the desired move.

Being a good parent is very difficult. Being a good parent in a noncustodial role, with the parent/child contact severely limited by court decree, is extremely difficult. The legislature and the past decisions of this court have placed a high level of importance on the rights of children to have the love and companionship of both parents. Any act which will interfere with that relationship should be closely scrutinized. Justice Levine suggests in her dissent that "[i]ndeed, vindictiveness should be the primary, if not exclusive, target of the statute." That is simply contrary to our caselaw which sets forth the best interests of the child, not the motive of the custodial parent, as the primary issue in deciding whether or not a change in residence of the child should be permitted. The trial court must be given substantial discretion in deciding whether to approve such a move, which might for all practical purposes severely distort or perhaps eliminate the parent/child nature of the relationship between the child and the noncustodial parent.

In many cases the determination of custody is an extremely close decision, and the determination that the best interests of the child will be served by placing the child in the custody of one parent takes into consideration the liberal visitation rights granted to the other parent. In some cases a trial court might very well have placed the child in the other parent's custody if, at the time of awarding custody, the court had known that the proposed custodial parent planned to move from the state.

Justice Meschke, in his dissent, points out that this is not a custody case and that the factors set forth in Section 14–09–06.2, N.D.C.C., cannot be used to determine the best interests of the child. It is axiomatic that the issue of child custody and visitation are interrelated. In *Burich v. Burich*, 314 N.W.2d 82 (N.D.1981), a case involving visitation and not a change of custody, Chief Justice Erickstad, writing for a unanimous court, said:

"In determining the best interests of a child, the trial court must consider the factors listed in Section 14–09–06.2, N.D.C.C. We believe that the factors impliedly recognize a child's need for a meaningful relationship with both his mother and his father. That need is met not only by daily contact with the custodial parent, but also by meaningful visitations with the noncustodial parent." 314 N.W.2d at 87.

Justice Meschke also states in his dissent that "change of residence does not itself change the right of visitation in any way that the parties or the court cannot amply adjust." That position is contrary to the very reason for the enactment of Section 14–09–07, N.D.C.C. To imply that there will be no adverse effect on the relationship between the noncustodial parent and the child as a result of the child moving more than 1,000 miles away is to overlook the realities of life. As Justice Levine concedes in the opening line of her dissent, "[i]t goes without saying that any change of residence will 'negatively impact' a father-child relationship where that father is a loving and attentive noncustodial parent."

The trial court has heard the testimony and observed the parties involved. It has determined that Lisa has not met her burden of proof in establishing that the best interests of Steven will be served by granting her permission to move to Seattle. The

decision of the trial court should be upheld unless we are convinced that a mistake has been made. We are not so convinced, and, accordingly, the order of the trial court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

MESCHKE, Justice, dissenting.

I respectfully dissent.

I believe that our decisions reflect a myopic view of a custodial parent taking the child to another state. N.D.C.C. § 14–09–07 says only:

> "*Residence of child.* A parent entitled to the custody of a child shall not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, where the noncustodial parent has been given visitation rights by the decree; however, a court order shall not be required if the noncustodial parent has not exercised such visitation rights for a period of one year."

It is not the statute, but rather this court, that places an evidentiary burden upon the custodial parent to show that it is in the best interests of the child. And, this court has supplied no guidelines about when it would be in the child's best interest. Certainly, the multi-factored analysis under N.D.C.C. § 14–09–06.2 cannot be used; it is for "the purpose of custody." A decision about custody was made earlier, either by the court or by the parents and approved by the court. The statute does not say that custody should be redetermined upon each change of residence. Nor, in our times, can a mere change of residence be considered a material change of circumstances which compels redetermination of custody.

Yet, under the course of our decisions, the sad dilemma of a custodial parent is either to give up custody to the other parent or to not move. That is the effect which is left unstated and, thus, ignored in today's decision. And, it is an effect accomplished without any consideration of the appropriateness of changing custody.

The only supporting premise for today's decision, extending a reason used in *Olson v. Olson*, 361 N.W.2d 249 (N.D.1985), is that this move would negatively impact the visitation relationship between the non-custodial parent and the child on two weekends per month. Today's decision emphasizes that the non-custodial parent has "fully exercised" visitation and has a "healthy relationship" with the child. But, this sounds as if the best interests of the non-custodial parent are the criteria. If the best interests of the child are truly at stake, a trial court should weigh the relative importance to the child of her relationship with each parent, not just the non-custodial parent. Neither the trial court nor this decision have addressed that relative importance.

If it is in the best interests of the child to be with the present custodial parent, a matter already determined by the placement of custody, it is hard for me to understand how that best interest is suddenly subverted when that parent decides to move to another state. No doubt there are situations where a decision to change residence may call for reconsideration about the proper custodial parent, (consider, for example, *Olson v. Olson, supra,* since it is really a change of custody case) but this sparse record certainly does not suggest any need to reconsider custody. But, as a practical matter, change of custody is forced upon this child if the mother moves to where her sister and her child's maternal grandparents now live. It bothers me that such a natural move can be denied without a great deal more than appears in this record.

The trial court apparently thought that the move would "negatively impact" the child's visitation with the noncustodial parent on alternating weekends. But, that narrow focus does not recognize that visitation can easily be adjusted, as in *Burich v. Burich*, 314 N.W.2d 82 (N.D.1981), from very short intermittent times to one or more longer periods during vacations. Change of residence does not itself change the right to visitation in any way that the

parties or court cannot amply adjust. As this court said in *Burich:*

> "We believe, however, that the trial court considered the need of the children to continue a good relationship with their father and sought to foster such a relationship by allowing liberal visitation during the summer months and vacations of the children." 314 N.W.2d at 88.

Conceivably, longer periods of visitation may better "enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child." N.D.C.C. § 14–05–22. But at least, without evidence, no assumption ought to be made on that subject. *See Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606, 614 (1984).

In *Burich v. Burich, supra* at 85, it was suggested that legislative history, in the form of testimony by a co-sponsor of the bill, supported application anew of "best interests of the child" criteria. My review of legislative history suggests that the remark reported in *Burich* was addressed to other parts of the bill that became chapter 194 of 1979 N.D. Session Laws, particularly the codification in N.D.C.C. § 14–09–06.2 of criteria for an award of custody. More apt to the change of residence provision is another statement by Representative Wayne Stenejehm, co-sponsor of the bill:

> "This bill does not eliminate the possibility of someone exercising their constitutional rights to travel but would say they have to go to court to get a decree from judge which permits that travel [or] with consent of other spouse. This has worked out well in Minnesota and other states." Minutes of Committee on Social Welfare and Veterans Affairs, March 2, 1979.

This legislative history, referring to the Minnesota experience, suggests that we ought to reconsider our ruling in *Olson v. Olson, supra,* which rejected the more benign approach adopted in Minnesota, *Auge v. Auge*, 334 N.W.2d 393, 397 (Minn.1983), "establishing an implicit presumption that removal will be permitted, subject to the noncustodial parent's ability to establish that removal is not in the best interests of the child." Such an approach more rationally differentiates between determining custody and defining visitation.

Therefore, I would reverse.

LEVINE, Justice, dissenting.

It goes without saying that any change of residence will "negatively impact" a father-child relationship where that father is a loving and attentive noncustodial parent. But nowhere does our law forbid a custodial parent from moving notwithstanding such "negative impact."

As Justice Meschke points out, there is no dispute that it is in the best interest of the child to remain in the custody of her mother. The question is, why did the trial court decide that the mother did not establish that it was in the best interest of the child to move to Seattle? The trial court notes that the move to Seattle gives the mother "flexibility" in her working schedule and greater opportunities for advancement. It apparently balances these factors with the "healthy relationship" between the child and the father as demonstrated by the father's full exercise of his alternate weekend visitation. Most telling is the trial court's finding that the mother established no "economic advantage" in moving.

So, I draw from the trial court's opinion the principle that, absent an immediate increase in wages, *i.e.,* economic advantage, a change of residence is not in the child's best interest, despite the fact that the custodial parent will have a more flexible work schedule allowing more time to be spent with the child, as well as greater opportunities for future economic advantage, if that move will interfere with a loving noncustodial parent's alternate weekend visitation. In my view, this is a clear misapplication of our law.

Whether or not *Olson* was correctly reasoned, its application to this case is wrong. *Olson* refused to recognize a presumption that it is in the child's best interest to move with a custodial parent. Here, however, the mother established that the move would provide long-term economic advantage and the immediate advantage of a flexible work schedule. I cannot see how

improving the quality of a custodial parent's life does not necessarily improve the quality of the child's life and is not therefore necessarily in the best interest of the child.

I could understand a decision denying a move intended simply to put distance between parents. Indeed, vindictiveness should be the primary, if not exclusive, target of the statute. But where there are legitimate reasons for a move, as have been established in this case, it is a grave mistake for the court to deny permission to move.

The effect of this decision is to stymie the custodial parent's efforts to improve the child's life. It leaves the custodial parent in a dead end job, bringing an abrupt halt to any attempt to make a better life for herself and the child. I will not speculate as to the strain this decision imposes upon the custodial parent-child relationship. While it leaves intact the noncustodial parent's alternate weekend visitation schedule, should he continue to choose to exercise it, it does so only at high cost to the child. The choice appears to be between providing visitation at less frequent intervals but of longer duration, or denying the custodial parent and child the reasonable opportunity to improve their lives. In endorsing the latter, we impose an unreasonable burden upon the custodial parent who wishes to move for a legitimate reason.

The majority affirms the principle that, absent the most compelling reasons, no move will be allowed if there is a loving noncustodial parent. The statute does not say that. *Olson* does not say that. But the trial court did, and in affirming the trial court, so does the majority.

I respectfully dissent.