Darcy L. HEDSTROM, formerly Darcy L. Berg, Plaintiff and Appellee,

v.

Clinton A. BERG, Defendant and Appellant.

Civ. No. 870283.

Supreme Court of North Dakota.

March 29, 1988.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellee; argued by Pamela J. Hermes.

Garaas Law Firm, Fargo, for defendant and appellant; argued by Jonathan T. Garaas.

MESCHKE, Justice.

Clinton A. Berg appealed from an order permitting his former spouse, Darcy L. Hedstrom, to move their children to Glendale, California. We affirm.

When Clinton and Darcy were divorced in 1984 at Fargo, Darcy received custody of their two boys, Jonathan, then age nine, and Jared, then age one, subject to reasonable visitation by Clinton. Shortly, Darcy married Scott Hedstrom and lived with the boys at nearby Harwood. Clinton married Carmen and lived at Fargo, exercising visitation on alternating weekends and holidays.

Scott, a master plumber, became unemployed in March 1986. Although both Darcy and Scott worked part time, they could not make ends meet. In June 1987, Scott found employment in Glendale, California, at wages better than those from his former full-time employment in North Dakota.

In August 1987, Darcy sought court approval, as required by NDCC 14–09–07, to take the boys with her to reside with Scott in California. After affidavits and a hearing, the trial court permitted Darcy "to move to the Montrose–Glendale, California area with the two minor children of the parties where her husband is presently employed." The trial court scheduled six weeks of visits by the boys with their father each summer, and directed Darcy to bear the transportation costs of those visits.

On appeal, Clinton complains that the trial court used improper factors and ignored views expressed by a majority of this court in *McRae v. Carbno*, 404 N.W.2d 508 (N.D.1987).

Clinton claims that the trial court improperly emphasized the economic advantage of the move for Darcy's present spouse, arguing that the economic advantage of a stepparent is not a relevant factor. This argument stems from the trial court's statement that,

"... my primary emphasis in this case is the economic advantage, which I think falls within Subsection 10 of 14–09–06.2, to be gained in this move, the Plaintiff and her sons having obviously been dependent upon Mr. Hedstrom for primary sustenance and support this last—since their marriage."

A stepparent naturally takes on a family relationship with children of a spouse. Part of NDCC 14–09–09 says: "If the stepparent receives [a spouse's dependent children] into the family, the stepparent is liable, to the extent of his or her ability, to support them during the marriage and so long thereafter as they remain in the stepparent's family." Therefore, there is a relationship between a stepparent's financial

situation and the circumstances of a spouse's dependent children. Here, the trial court went on to conclude that the move "would be an economic advantage to [Darcy] and the children," not solely for the stepparent.

■ Although Clinton was obligated to pay $300 a month support for his two boys, he did not always keep those payments current. Certainly, Darcy's disposition to provide the boys with care and material needs, while living with her current husband, is an important factor. *See* NDCC 14–09–06.2(3). We conclude that the trial court's finding, that economic advantages make this move in the interests of these children, is relevant and is supported by the record.

Clinton argues that the trial court ignored views expressed by a majority of this court in *McRae v. Carbno, supra.* Clinton submits that the *McRae* ruling precludes a custodial spouse from moving children to another state when it adversely affects an ongoing and healthy course of visitation between the children and a non-custodial spouse.

Although there was disagreement amongst us in *McRae,* we agree in this case that Clinton's argument reads too much into that majority opinion. In *McRae,* the trial court had found as a matter of fact that there were insufficient favorable factors to outweigh the negative impact of the change of residence on a healthy relationship between that daughter and father. The opposite occurred in this case. Here, the trial court found that favorable factors of this change of residence outweighed negative impacts on these children and on their relationship with their non-custodial parent.

■ This case is more like an earlier decision of this court in *Burich v. Burich,* 314 N.W.2d 82 (N.D.1981). In *Burich,* a trial court approved a change of residence for the children so that they could accompany their mother with a new husband establishing a new business in another state. The *Burich* trial court determined that advantages of the move predominated and further balanced negative aspects by scheduling increased summer visits for the children with their father. As in *Burich,* this trial court also sought to offset negative aspects of the move by scheduling six weeks of summer visits by the children with their father at his home. We have no reason to conclude that this was clearly erroneous.

*McRae v. Carbno, supra,* did not convert the statutory prescription, requiring court permission for a parent with custody to move children of divorce to another state, into a prohibition against moving them at all. Whatever our disagreements about applying the statute when a move is denied by a trial court, we agree that the trial court has the principal responsibility for determining when a change of residence is in the children's best interests. Where the trial court has fairly done so, as here, we will not substitute our judgment. We are not convinced that a mistake was made in determining that it was in the best interests of these children to accompany their mother to reside in California where her new husband had found favorable employment.

■ Clinton also points to a concurring comment of Justice VandeWalle in *Dennis v. Dennis,* 366 N.W.2d 474, 477 (N.D.1985) (*"Dennis I"*), cautioning about possible loss by our courts of power over custody and visitation six months after children of divorce are permitted to move to another state. Clinton insists that he will be disadvantaged if he is not able to protect his visitation rights in North Dakota courts. He asks us to "zealously guard [North Dakota courts'] jurisdiction over Darcy and these children" by reversing the trial court. Without trying to completely reconcile diverse views of members of this court expressed in *Dennis I, supra,* and *Dennis v. Dennis,* 387 N.W.2d 234 (N.D.1986) (*"Dennis II"*), we point out that those decisions do recognize that some judicial powers over custody and visitation can continue in North Dakota even after children are allowed to live in another state. Furthermore, California has the same Uniform Child Custody Jurisdiction Act (West's Ann. Cal.Civ.Code §§ 5150 to 5174) as North Dakota (NDCC Ch. 14–14), and is

equally subject to the Federal Parental Kidnapping Protection Act, 28 U.S.C. § 1738A. Clinton has adequate procedures available to assure continuation of meaningful relationships with his children.

We affirm the trial court.

ERICKSTAD, C.J., MESCHKE, GIERKE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.