Jacque S. NOVAK, now known as Jacque S. Olson, Plaintiff and Appellee,

v.

Richard R. NOVAK, Defendant and Appellant.

Civ. No. 880355.

Supreme Court of North Dakota.

June 6, 1989.

McConn, Fisher, Olson & Daley, Grand Forks, for plaintiff and appellee; argued by Patrick W. Fisher.

Pearson, Christensen & Fischer, Grand Forks, for defendant and appellant; argued by Douglas A. Christensen.

MESCHKE, Justice.

Richard R. Novak appealed from a judgment which permitted his former spouse, Jacque S. Olson, to move with their son, Joel, to Colorado Springs, Colorado and which denied his request for a change of custody. We affirm.

Richard and Jacque were divorced in October 1984. The stipulated decree placed Joel, then age nine, in Jacque's principal custody with reasonable visitation for Richard. An older son, Daniel, diagnosed as being autistic, resides at the Grafton State School.

In June 1986 Jacque married David Olson, an Air Force officer, who has now retired. Jacque and David have adopted a nine year old girl.

In September 1988 Jacque requested judicial permission to change Joel's residence to Colorado Springs. Supporting that request, Jacque submitted an affidavit showing that Colorado Springs offered excellent opportunities in her career field of nursing as well as job opportunities for David in computers and personnel management. Shortly after Jacque's motion, Richard moved for a change of custody, requesting the district court to give him principal custody of Joel. The trial court approved the change of residence and denied the change of custody.

NDCC 14–09–07 requires a custodial parent to obtain a court order to change a child's residence to another state if the noncustodial parent does not consent to the move. The custodial parent must demonstrate that the change of residence is in the best interest of the child. *Olson v. Olson*, 361 N.W.2d 249 (N.D.1985). The trial court has the principal responsibility for determining whether a change of residence is in the child's best interest. *Hedstrom v. Berg*, 421 N.W.2d 488 (N.D.1988). This court will not substitute its judgment for that of the trial court unless the trial court's decision is clearly erroneous. *Id.*

■ Richard asserted that the trial court's approval of this change of Joel's residence was clearly erroneous. Having had an opportunity to judge the credibility of the parties and witnesses, the trial court concluded that it would be in Joel's best interest to move with his mother and her present family to Colorado Springs. We are not convinced that the trial court made a mistake.

The trial court recognized the increased opportunities for David and Jacque in their respective fields of computers and nursing. The trial court had the testimony of Dr. Douglas Knowlton, a practicing clinical psychologist, that Joel is a "well-adjusted" and "stable" boy who should be able to easily adapt to such a move. The trial court weighed that evidence over other evidence that Joel preferred to reside with his father and the opinion of another expert, Dr. Leland Lipp, that Joel should remain in Grand Forks. The trial court appropriately weighed relevant factors in determining that Joel's best interest was to continue residing with his mother when she moved to Colorado.

The trial court recognized the importance of also continuing Joel's close and loving relationship with Richard. The trial court expanded Richard's visitation rights to encourage and foster their parent-child relationship. The trial court decreed that, instead of bi-weekly weekend visits, Richard receive at least eight weeks of visitation during the summer, one week over the

Christmas holiday season, alternating on other major holidays, and "other reasonable visitation that the parties may arrange." The trial court also encouraged Jacque to foster additional visitation and ordered Jacque to keep Richard "informed of the telephone number and whereabouts" of Joel to facilitate visitation.

We conclude that the trial court's authorization of the change of residence was not clearly erroneous.

■ Richard asserted that the trial court erred in denying his request to have Joel placed in his custody. Custody should be changed only when: (1) there has been a significant change of circumstances since the original custody decree, and (2) the changed circumstances show a significant need for a change of custody in the best interest of the child. *Wright v. Wright*, 431 N.W.2d 301 (N.D.1988). The trial court's decision to modify custody, or refusing to do so, will not be overturned on appeal unless it is clearly erroneous. *Id.*

The trial court found that "both parents have the love, affection and emotional ties to the child and the disposition to provide for the child." The trial court acknowledged that Joel's preference to reside with his father "seems natural" because they enjoyed doing many things together and because Richard provided many things for Joel. However, the trial court found that Jacque provided more discipline for Joel and that she was less indulgent and permissive with Joel. The trial court determined that Jacque had provided "a stable loving environment" for Joel in which Joel has done relatively well in school. Declaring that "children need stability and consistency to thrive," the trial court concluded that it was in Joel's best interest to remain with his mother.

■ The preference of a child who is capable of intelligently choosing between his parents for custody can be significant in determining the best interest of the child. *Mertz v. Mertz*, 439 N.W.2d 94 (N.D.1989). "[A] child's preference to live with the noncustodial parent may, in some instances, be motivated by goals and ambitions which undermine the significance of

that preference and may, in fact, be detrimental to the child's best interests." *Id.* at 97. Thus, the child's preference is "only one factor" to consider and is not usually determinative. *Roen v. Roen*, 438 N.W.2d 170 (N.D.1989). The trial court emphasized another important factor: the stability and continuity of the integrated family unit in which Joel has been residing. *Orke v. Olson*, 411 N.W.2d 97 (N.D.1987). The trial court appropriately weighed relevant factors.

The trial court concluded that the change of circumstances did not "warrant a change in custody in Joel's best interest." We believe that the trial court's denial of Richard's motion to change custody was not clearly erroneous.

We affirm the judgment.

ERICKSTAD, C.J., and LEVINE, J., concur.

VANDE WALLE, Justice, concurring specially.

The trial court's memorandum opinion stated it "does not find that there has been a sufficient change of circumstances to warrant a change in custody in Joel's best interest. The Court finds it would be in the child's best interest to allow the change of residence." But "changed circumstances" have been defined by this court as "new facts which were unknown to the moving party at the time the decree was entered." *Wright v. Wright*, 431 N.W.2d 301, 303 (N.D.1988). Jacque's subsequent remarriage and her decision to move to Colorado are obviously material facts which were unknown to Richard, and most probably to Jacque herself, at the time of the original default divorce. There can be no doubt that a material change of circumstances occurred. Had Richard been aware at the time of the original divorce decree that Jacque would attempt to remove Joel from the State it seems probable that custody would have been contested and that Richard would not have stipulated that physical custody of Joel would be with Jacque. It appears to me that a conclusion that there has not been "sufficient change

of circumstances to warrant a change in custody in Joel's best interest" blurs the two questions to be answered in disposing of motions to change custody, i.e., (1) has there been a substantial change in circumstances and (2) is it in the best interests of the child that custody be changed? *Miller v. Miller*, 305 N.W.2d 656 (N.D.1981). In *Mertz v. Mertz*, 439 N.W.2d 94 (N.D.1989), we recognized that the preference of the child is more relevant in determining the best interests of the child than it is in determining whether there has been a significant change in circumstances.

My reluctance to affirm the trial court's order denying a change of custody stems from the fact that I believe the trial court, perhaps inadvertently, appears in its memorandum opinion to trivialize the preference of a 13–year–old child to remain in Grand Forks where he has lived all of his natural life, and where he is close to his extended family, including a brother whom he visits regularly at the Grafton State School. The trial court concluded that "It seems natural that Joel would like to live with his father for several reasons. First, the father has provided many things for Joel. Joel enjoys being with his father where it appears that he is eager to please his father and really does not need much by way of discipline. Secondly, the Court believes that Joel feels his father needs him. Thirdly, this will allow him to stay in Grand Forks." The same conclusions could be made regardless of Joel's age, assuming he was of the age of reason.

We noted, at footnote 2 of *Mertz,* supra, that presumably the trial court gives more weight to the child's preference as the child matures. I am not convinced that happened in this case. We also observed in that footnote that we assume the trial court recognizes that a child's preference to live with the noncustodial parent may, in some instances, be motivated by goals and ambitions which undermine the significance of that preference and might be detrimental to the child's best interests. Despite the offhand comments about discipline those ulterior goals and ambitions do not appear on this record. Rather, the sincerity of Joel's preference is reflected in his desire to be among his extended family, most importantly his brother. Moreover, it would appear that the same general observations could be made about the relationship between most children and the noncustodial parent because the custodial parent is the person in whose home the child lives and who is in direct contact with the child day to day, through good times and bad. The custodial parent will be the disciplinarian and the noncustodial parent, even under generous visitation provisions, will be an outsider. So, too, the noncustodial parent will be suspect for having "bought" the child's affection because they go to special places or special events are planned during the time of visitation. But it is because visitation is limited that it is natural for the noncustodial parent to plan something special during the visitation in order to best use the limited time together, whereas such planning is not necessary for the custodial parent who sees the child day to day.

Although I believe the child's preference should be given consideration as the child matures, at least where it is not based on frivolous reasons, I recognize that the preference is not controlling. If it were, I would reverse the order of the trial court denying the change in custody. What is written above reflects my concern that insufficient consideration was given to the child's preference under the facts of this case. I am not convinced that more serious consideration of Joel's preference to live with Richard would cause the trial court to change its result. I cannot, therefore, conclude that under our standard of review the decision of the court is clearly erroneous and I therefore reluctantly concur in the result.

GIERKE, J., concurs.