Kathryn S. GOULD, f/k/a Kathryn S. Johnson, f/k/a Kathryn S. Miller, Plaintiff and Appellee,

v.

Randall P. MILLER, Defendant and Appellant.

Civ. No. 910386.

Supreme Court of North Dakota.

July 28, 1992.

O'Neel Law Office, Fargo, for plaintiff and appellee; argued by Michael C. O'Neel.

Garaas Law Firm, Fargo, for defendant and appellant; argued by Jonathan T. Garaas.

MESCHKE, Justice.

Randall Miller appeals the denial of his motion to change primary custody of three daughters from Kathryn, their mother, to himself. We affirm.

Kathryn and Randall Miller were divorced in March 1990 at Fargo, North Dakota. The decree awarded primary physical custody of their three daughters to Kathryn with extensive visitation to Randall. Randall was ordered to pay Kathryn $1,200 each month during September through May and $300 each month during June, July and August for child support. Randall remained in the family home, while Kathryn and her daughters moved nearby to another home in south Fargo.

Without Randall's consent or the court's approval, Kathryn moved with the children in May 1991 to the residence of Thomas Gould in Moorhead, Minnesota. In June, Kathryn married Gould.

Describing the change of residence as "illegal," Randall moved to change primary custody of the girls to himself. Randall claimed that the children had a "strong desire" to live with him because Kathryn was no longer attentive to their needs. Randall also claimed that he had located a "loaded 9 mm pistol" and "a green, vegetable-like substance," later tested as marijuana seeds, in Kathryn's home. Randall urged that these items in Kathryn's home demonstrated her "irresponsible behavior." Randall's motion was also supported by an affidavit of Becky, the eldest daughter, age 12, expressing her preference to live in Fargo with her father.

Kathryn counter-moved that Randall be held in contempt for "refus[ing] to deliver property that was assigned to" her in the divorce decree. Kathryn also moved that the decree be amended to restrict the hours that Randall could call Kathryn or the children, to enjoin the parties from "bad mouthing" each other or "involv[ing] the minor children in any of the disputes between them," and to change scheduled visitation. Kathryn submitted psychological evaluations of herself, her new husband, and the three children.

The motions were heard together at a trial begun in August, continued, and completed in October 1991. At the first hearing, the trial court granted Randall's request to enroll the children in Fargo schools pending the outcome. After the court denied a change in custody, the court required the two younger children, Pamela and Stacey, to transfer to a Moorhead school at the end of the grading period. Becky was allowed to temporarily stay in her Fargo school, but was required to transfer at the end of the school year to a Moorhead school. The order required Kathryn and Randall to coordinate transportation for attending the Fargo schools, and to plan a "detailed visitation schedule" for an uninterrupted visitation time with Randall during the summer. The court suspended Randall's child support obligation during summer visitation.

Randall appeals. Randall primarily argues that the trial court did not understand the legal effect of several significant changes in circumstance since the divorce and, therefore, improperly denied a change of custody.

For an original placement of the custody of a child, when parents divorce, the trial court needs to determine only the best interests and welfare of the child. NDCC 14–09–06.1. For a motion to modify an original custodial placement, the trial court needs to make a two-step analysis. First, the court must determine whether there has been any significant change in circumstance since the original placement. *Orke v. Olson*, 411 N.W.2d 97, 99 (N.D. 1987). If the court finds a significant change in circumstance, it must then consider whether the change compels a custodial change for the best interests of the child. *Id.* The parent seeking to modify custody has the burden of showing both that a circumstance changed significantly and that this change so adversely affected the child that custody should be changed. *Lapp v. Lapp*, 336 N.W.2d 350 (N.D.1983). As the movant, Randall had this burden.

However, Randall argues on appeal that the burden of persuasion was on Kathryn to justify moving the children out of state, even though the move was merely to another neighborhood in the same urban community of Fargo and Moorhead, "twin cities" across the river from each other. *See Olson v. Olson*, 361 N.W.2d 249, 252 (N.D. 1985). Nevertheless, the trial court ruled that the move to a nearby city did not adversely affect the children, nor significantly affect their visitation with Randall.

Randall argues that the trial court misunderstood the two-step analysis for considering a change of custody, and that the court thereby failed to recognize the significance of the changes that have occurred since the original custody award. A trial court's determination about changing child custody is a finding of fact, not to be set aside on appeal unless clearly erro-

neous. *Miller v. Miller*, 305 N.W.2d 666, 671 (N.D.1981). While we prefer findings of fact that disclose the reasons for a trial decision, an express finding on every factor is not necessary. *Pfliger v. Pfliger*, 461 N.W.2d 432 (N.D.1990). When the trial court does not fully explain, we will not upset its decision if valid reasons are fairly discernible either by deduction or inference. *Ness v. Ness*, 467 N.W.2d 716, 718 (N.D.1991). Here, as in *Ness*, the trial court's findings and conclusions "are hardly a model of clarity or completeness," but the court's oral comments convey an adequate comprehension of its reasoning.

Early in the trial, the court expressed confusion about the necessary two-step analysis, and seemed to say that "[a] significant change of circumstances is not the appropriate standard in determination of child custody." A further reading shows, however, that the court asked for and heard arguments from both parties about the effect of a significant change of circumstances. In its concluding remarks, the court stated, "I'm not so sure that the criteria is a significant change in circumstances. [But] [i]f it is, there was none."

The trial court's remarks thus recognized that significant changes had occurred, but concluded that the changes were not so compelling as to require a change of custody. The court particularly discussed Kathryn's move from Fargo to Moorhead, and the argument that the children "vehemently objected" to the move. The court concluded that, while moving to Moorhead without the court's permission was a "technical violation of the law.... [I]t's [only] ten blocks away." The court said:

It is true that [Kathryn] has violated the law by moving her kids from Fargo to Moorhead, but we don't live in a vacuum. I can't make that significant, except to the extent that she has violated a law or the Court's order—I think it's really the Court's order, but let's use the term "violated the law"—by moving to Moorhead, but she wouldn't have to [obtain court permission to move to] the north side of Fargo or the west side of Fargo or a number of places in Fargo.

The court thus concluded that the move to Moorhead did not adversely affect the children or the father's visitation with them enough to compel a change of custody.

Although a move to an adjacent city in this state would not ordinarily be significant, a move to another state, even close by, is made significant by law. NDCC 14–09–07. Nevertheless, the move to another state does not, by itself, compel a change of custody. If the trial court approves the move, even after the fact, the move does not dictate a change of custody.

Weighing the children's objections to living in Moorhead, the trial court commented:

The message I get from the guardian ad litem and the psychologist, Dr. Offutt, is that the preference of the children is based upon place and the past,.... The past—[to] see if they can hold on to the past. They want to hold on to their school and they want to hold on to their friends. And there's nothing wrong with that.

While a child's preference may be considered, it is not controlling. *Thomas v. Thomas*, 446 N.W.2d 433 (N.D.1989). We affirm the court's conclusions that neither the move to Moorhead nor the children's desire to "hold on to the past" compelled a change in custody.

Nor did Kathryn's marriage to Thomas Gould, while a significant change, compel a change of custody as a matter of law. The trial court accepted Kathryn's and Thomas's explanations about his possession of a pistol and some marijuana seeds, and did not deem those isolated acts so indicative of bad character that they adversely affected the children. We conclude that this assessment was not factually erroneous.

The trial court's remarks show that, through the testimony and recommendations of the guardian ad litem and Dr. Offutt, a clinical psychologist, the court carefully considered the effects of the changes on the children. Offutt's report stated that all three children were experiencing "significant stress" because of the family turmoil, and that they would be served best by a "consistent routine." Of-

futt recommended that, during the school year, the children remain in the custodial home with short visits to the non-custodial home, and have summer visits of "large blocks of time." Accepting this suggestion, the court directed the transfer of the children to Moorhead schools, and directed counsel for both parents to write a "detailed visitation schedule" for an eight-week, summer visitation with Randall.

In concluding remarks, the trial court fairly assessed the nature of this dispute between the parents.

> [T]his motion finds its roots in the antagonism that these two people have for each other. And they're using their children to work out that antagonism towards each other.... That's inappropriate. Just plain inappropriate.
>
> \*    \*    \*    \*    \*    \*
>
> It's time that these parents, which they still are parents of three girls, discontinue discouraging the kids' relationship with the other parent. Both of them.

We agree. For the well-being of their children, each parent must encourage each child's relationship with the other parent.

We conclude that the trial court correctly applied the necessary two-step analysis for determining a change of custody motion, fairly assessed the changes in circumstance, and properly denied Randall's motion to change custody. We affirm.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and JOHNSON, JJ., concur.