**Bradley L. POZARNSKY, Plaintiff and Appellant,**

v.

**Nancy POZARNSKY, Defendant and Appellee.**

**Civ. No. 920228.**

Supreme Court of North Dakota.

Dec. 22, 1992.

---

Wheeler Wolf, Bismarck, for plaintiff and appellant; argued by William D. Schmidt.

Dianne Hausmann, third-year law student (argued), Legal Aid Ass'n, Grand Forks, for defendant and appellee. Appearance by Ruth A. Jenny.

MESCHKE, Justice.

We affirm orders about custody, visitation, and child support. We remand for reconsideration of the award of attorney fees in this domestic relations case.

When Bradley and Nancy Pozarnsky were divorced in July 1988 at Bottineau, the decree incorporated their agreements that Nancy would have custody and care of their five-year-old twins, Daniel and Chelsey, that Bradley would have "a minimum of four days per month visitation" on Bradley's "days off work, if possible," and that Bradley would pay $400 per month to Nancy for support of the twins.

Nancy moved to Grand Forks in mid-1990 to enroll at the University of North Dakota for a graduate degree. Nancy enrolled the twins in public school there. Bradley's contact with the children became infrequent. Daniel missed his father and had some problems in school. In March 1991, when Daniel went to visit his father at Lake Metigoshe, Nancy agreed to let him stay awhile. Daniel finished the school year in Bottineau, but on July 4 Nancy insisted on his return to Grand Forks with her.

Bradley promptly moved for temporary custody of Daniel and to modify the divorce decree for permanent custody of Daniel, adding that he "would be more than willing to take custody of both children should the Court conclude that that is in their best interests." Nancy resisted, and the motion was referred to a referee.

After a hearing, the referee determined that, "[c]onsidering the substantial increase in distance between [Bradley's] home and the children[']s new home," Nancy's move to Grand Forks "does constitute a significant change of circumstances" requiring consideration of whether custody should be modified for the children's best interests. Nevertheless, the referee recommended against splitting custody of the twins, and that a change of custody be denied.

Still, the referee found that "Daniel is in need of significant contact with [ ]his father and that an extension of the visitation schedule is necessary." The referee recommended expanding Daniel's visitation with his father to two weekends each month, alternating holidays, and from June 5 through August 15 each year. The referee directed that, "[s]o long as [Nancy] con-

tinues to live more than 100 miles from Bottineau," Bradley and Nancy must "meet at a point approximately halfway between their homes to pick up and return the children for the *first* weekend visit of each month and all holiday visits." The referee designated Devils Lake as that halfway point while Nancy lives in Grand Forks. The referee also ruled that, for the two months that Daniel spent with Bradley in the summer, Bradley would not receive any credit on his child support.

Bradley asked the trial court to review the referee's decisions. Nancy then moved for an award of attorney fees and to increase Bradley's support obligation to "guideline levels." Her supporting affidavit stated that she was a full-time student at UND, living "on grants and loans, the small amount of child support Brad pays, and a part-time job," that Bradley was $1,000 in arrears in child support, and that she was "unable to finance attorney's fees to resist the endless litigation Brad continues to press." Her motion and Bradley's resistance were submitted pursuant to NDROC 3.2, without a hearing or oral argument.

The trial court confirmed the referee's orders on custody and visitation. The court went on to find that "it would be difficult, if not impossible," for Nancy to pay all of her attorney fees, that Bradley "does have the present ability to pay those fees," and that, "[w]ithout regard to [Bradley's] justification in bringing the motion" to change custody, "it would be fair to order that [Bradley] pay a part of [Nancy's] attorney fees occasioned by the motion." The court ordered Bradley to pay Nancy $500, in five monthly installments of $100, as a partial reimbursement of her attorney fees.

The trial court recognized that, under *Garbe v. Garbe*, 467 N.W.2d .740 (N.D. 1991), a disparity between a present support obligation and the amount set by the guidelines does not constitute a change in circumstances that justifies a change in support. However, the trial court found that Nancy's move and enrollment at UND has "temporarily limited her employabili-

ty." Recognizing this as a voluntary change by Nancy, the trial court reasoned that her "decision to seek further education is probably wise and likely to increase her ability to support herself in the future."

Viewing Nancy's "voluntary change [as] one that is likely to improve [her] employability and income, and therefore is also very likely to be in the best interests of [their] children," the trial court concluded that she had proved a material change in circumstances that justified increasing Bradley's support obligation to the guideline amount. Applying the guideline schedule in NDAC 75–02–04.1–10 to Bradley's net monthly earnings of $1,968, the court ordered Bradley to increase his child support to $575 monthly.

Bradley appeals. He argues that custody of Daniel should have been changed to him, that Nancy should be required to meet him halfway for each child visitation, and that nothing justified increasing his child support obligation. Bradley also argues that the award of attorney fees to Nancy was "inappropriate and totally unsupported by the evidence."

■ Bradley emphasizes the referee's finding, that "Daniel is in need of significant contact with [ ]his father," as demonstrating a clear need to change Daniel's custody. However, the referee made that finding as a reason for expanding visitation, not for custody. On custody, the referee concluded that "it has not been shown ... that Daniel's emotional health will be adversely affected by continuing to live with his mother and that a change in his custody would be in his best interests." We conclude that the referee fairly considered the evidence and that the refusal to change Daniel's custody is not clearly erroneous.

■ We also conclude that requiring Bradley to travel all the way to and from Grand Forks for the second weekend of visitation each month was not an abuse of discretion. We affirm the orders on custody and visitation under NDRAppP 35.-1(a)(2) and (4).

We agree with the trial court that Nancy's decreased earnings and employability while she furthered her education, even though self-selected, was a significant change in circumstances that justified conforming child support to the prevailing guidelines. Although Nancy's affidavit did not fully develop her finances, nor show the extent of her earnings and household needs, the guidelines are premised on the obligor's income, not on the obligee's earnings or needs. NDAC 75–02–04.1–02 and 75–02–04.1–09(1). Therefore, we affirm the trial court's order increasing Bradley's support obligation to the guideline amount.

Bradley urges that this award of attorney fees was "inappropriate" because his motion was "meritorious and brought about primarily because of [Nancy's] actions." An award of attorney fees in litigation about marital obligations between former spouses does not depend entirely on the merits of each position, although whether one party's actions unreasonably increased the time and effort spent on the dispute can be a factor. *Lucy v. Lucy*, 456 N.W.2d 539, 544 (N.D.1990). Unlike an award of attorney fees under NDCC 28–26–31 or NDRCivP 11, an award of attorney fees in a marital dispute does not ordinarily depend on lack of good faith or reasonableness. Instead, under NDCC 14–05–23, the principal standards are one parent's need and the other parent's ability. *Lucy* at 544. Therefore, Bradley's assertion that his motion to change custody had some merit does not control our review of this award of attorney fees to the custodial parent.

More difficult is Bradley's argument that there is no evidence to support the trial court's conclusion that Nancy needed help to pay her attorney fees. NDROC 8.2 deals with orders in domestic relations cases. Subsection (c) of that rule says that, "[a]s a general rule, partial payments of attorney's fees and costs will be ordered if the financial statement sets forth facts establishing that a party has insufficient personal income or funds with which to pay attorney's fees and costs...." Here, Nancy's supporting affidavit was not in the form of the financial statement prescribed by NDROC 8.2(g), and it was too general and conclusory. *See McIntee v. McIntee*, 413 N.W.2d 366 (N.D.1987). Therefore, we reverse this award of attorney fees and remand it for reconsideration.

On remand, we direct that Nancy be required to file the itemized financial statement required by NDROC 8.2(g), so that the trial court may properly determine an award of attorney fees for these proceedings. We affirm the other orders appealed.

LEVINE, VANDE WALLE and JOHNSON, JJ., concurs.

ERICKSTAD, C.J., concurs in the result.