1997 ND 51

**Kevin LOLL, Plaintiff and Appellee,**

v.

**Sharon LOLL, n/k/a, Weinbaum, Defendant and Appellant,**

v.

**Brittany LOLL and Brandon Loll, Intervenors.**

**Civil No. 960279.**

Supreme Court of North Dakota.

April 1, 1997.

---

Leslie Johnson Aldrich, of Johnson Law Office, Fargo, for defendant and appellant.

Don Krassin, of Krassin Law Office, Wahpeton, for plaintiff and appellee.

A.W. Stokes, Wahpeton, for intervenor Brittany Loll.

Linda Hickman, of Lies, Bullis & Lindberg, Wahpeton, for intervenor Brandon Loll.

NEUMANN, Justice.

[¶1] Sharon Loll appeals the district court's custody and visitation order, awarding custody of her son, Brandon, to Keith Loll, and requiring all visitation to occur in North Dakota, under supervision. We affirm in part and reverse in part.

[¶2] Sharon and Kevin Loll were married September 19, 1982. On September 23, 1983, the couple had twins, Brittany and Brandon. In July 1984, the couple divorced. In the divorce, Sharon stipulated to Kevin receiving custody of the twins. The original divorce decree granted visitation to Sharon but did not specify details.

[¶3] After they divorced, Sharon moved to her home state of Missouri, while Kevin remained in Wahpeton, North Dakota, with the children. In 1987, each party remarried. That same year, Sharon moved for specific visitation rights. The district court issued a temporary visitation order.

[¶4] Over the next eight years, Sharon's visitation rights were defined by temporary court orders based on stipulations of the parties. Ordinarily, Sharon visited the children in North Dakota, but in the later years, the children flew to Missouri for visitation. Sharon paid for the travel and visitation costs. In May 1992, Kevin moved for child support, and Sharon was ordered to pay it.

[¶5] In 1994, after visiting Sharon in Missouri, Brittany decided she wanted to live with Sharon. When she returned to North Dakota, she refused to return to Kevin's house. Kevin, however, opposed Brittany's living with Sharon. The district court, acting in this divorce proceeding, and apparently without affording Brittany the rights and protections of juvenile court jurisdiction and procedure, found Brittany was unruly and placed her in foster care. After Brittany lived in foster care for three months, the district court gave Sharon temporary custody of her.

[¶6] Thereafter, the parties did not have contact with each other until the summer of 1995 when Kevin moved to cancel Brandon's summer visit with Sharon. Sharon made a counter motion, seeking custody of Brandon, or as an alternative, seeking a specified visi-

tation schedule. On December 14, 1995, the district court issued a memorandum opinion and temporary order, denying Sharon's request for custody, and scheduling supervised visitation of Brandon for that spring.

[¶ 7] In June 1996, Sharon requested the court issue a final appealable custody and visitation order. On July 19, 1996, the district court issued its final order, leaving sole physical and legal custody of Brandon with Kevin, and awarding Sharon physical custody of Brittany, with both Kevin and Sharon sharing legal custody of Brittany. The court further ordered future visitations to be exercised in North Dakota on a supervised basis through the guardian ad litem.

[¶ 8] Sharon appeals, arguing the district court erred by: (1) not making findings of fact before entering its final order; (2) awarding custody of Brandon to Kevin; (3) requiring all visitation be in North Dakota under supervision; (4) requiring Sharon to assume all visitation costs; (5) accepting the testimony of Brandon's psychologist, Dr. Schumacher; and (6) permitting the children to intervene in the custody action.

[¶ 9] Sharon first argues the district court erred by failing to make findings to support its July 19, 1996, custody and visitation order. She contends that, without findings, we cannot determine whether the order is clearly erroneous. Accordingly, she asks this court to remand the case for findings of fact. Although we agree with Sharon that generally we remand for clarification of missing or conclusory findings of fact, we do not do so when we can discern the rationale for the district court's result. *Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D.1996). "We may rely upon implied findings of fact when the record enables us to understand the factual determinations made by the trial court and the basis for its conclusions of law and judgment." *Id.*

[¶ 10] On December 14, 1995, the district court entered a memorandum opinion. In its memorandum opinion, the district court made detailed findings in determining its temporary custody and visitation order. These findings were made only six months before the final order was entered. Although the findings are less than ideal, they are adequate to help us understand the district court's reasoning. Accordingly, we will review the custody and visitation order based on these findings.

[¶ 11] Sharon argues the trial court erred by granting Kevin custody of Brandon. Specifically, Sharon argues Kevin should not have been granted custody of Brandon because Kevin was uncooperative about visitation and alienated the children from their mother. Although Sharon does not address it in her brief, by asking for custody of Brandon, she is asking the court to change custody.

[¶ 12] Upon a motion to modify custody, the district court must make a two-step analysis. *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 201 (N.D.1995). First, the court must determine whether there has been a significant change in circumstances. *Id.* If there has, then the court must then determine whether that change compels a custodial change in the child's best interest. *Id.* A district court's decision to modify custody is a finding of fact subject to the clearly erroneous standard of review. *Barstad v. Barstad*, 499 N.W.2d 584, 587 (N.D.1993). A finding of fact is clearly erroneous only if this court is left with a definite and firm conviction a mistake has been made. *Freed v. Freed*, 454 N.W.2d 516, 518 (N.D.1990).

[¶ 13] In determining that Brandon should stay with Kevin, the district court did not address whether there was a change in circumstances compelling us to examine whether a custodial change is in the best interests of the child. Upon review of the record, we do not think a change of circumstances exists. Even if we thought a change of circumstances existed, we do not think the district court erred by keeping Brandon in Kevin's custody.

[¶ 14] Here, the district court gave custody of one twin to the father and custody of the other twin to the mother. Normally, it is not desirable to split the custody of siblings. *Leppert v. Leppert*, 519 N.W.2d 287, 291 (N.D.1994); *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D.1995). Arguably, when the children are twins, it is even less

629

favorable to separate them. However, it appears the district court had no other option in this case. Brandon, who lives with Kevin, has expressed severe anxiety toward Sharon. Brandon's anxiety was so severe, in 1995, both his psychologist and guardian ad litem expressed reservations in allowing Sharon visitation rights with him. Brittany, on the other hand, was so adamant that she live with Sharon that, in 1994, she chose to live in foster care rather than return to Kevin's home.

[¶ 15] A child's preference can be an important factor to consider when determining the best interests of the child. N.D.C.C. § 14–09–06.2(*l*)(i); *Freed*, 454 N.W.2d at 519 (upholding the district court's decision to separate the siblings primarily due to the son's strong preference to remain with his father). A district court may give more weight to the child's preference as the child matures. *Mertz v. Mertz*, 439 N.W.2d 94, 96 n. 2 (N.D.1989). Here, Brandon and Brittany are thirteen years of age. In consideration of their age and their strong preferences, we do not believe the district court erred by retaining custody of Brandon in Kevin, and granting Sharon physical custody of Brittany.

[¶ 16] In reaching this decision, we are not dismissing Sharon's assertion that Kevin alienated the children from their mother. Evidence of alienation or frustration of visitation is a significant factor in determining custody. *McAdams*, 530 N.W.2d at 650 (holding that a parent who willfully alienates a child from the other parent may not be awarded custody based on that alienation). *Van Dyke*, 538 N.W.2d at 201 (noting that parental frustration of visitation may be considered in determining custody). However, the evidence here is insufficient to convince us the district court was clearly erroneous in not finding Kevin guilty of alienation. If anything, the record suggests both Sharon and Kevin are guilty of distrusting each other and perpetuating unnecessary conflict between them. This being the case, while methods other than change of custody should be used initially to remedy a parent's misbehavior, we caution both parties that evidence of alienation and persistent frustration of visitation ultimately can be relevant factors

in a change of custody action to determine whether a material change of circumstances exists. *Van Dyke*, 538 N.W.2d at 201.

[¶ 17] Sharon next argues the district court erred by ordering all visitation be supervised by the guardian ad litem and exercised in North Dakota. Again, the district court's findings of fact will not be disturbed unless clearly erroneous. *Rule 52(a)*, *N.D.R.Civ.P.*; *Davis v. Davis*, 448 N.W.2d 619, 620 (N.D.1989); *Freed*, 454 N.W.2d at 518 (noting that a trial court's determinations in matters of custody are treated as findings of fact).

[¶ 18] In its 1995 memorandum opinion, the district court ordered supervised visitation with Brandon because of Brandon's dislike and distrust for his mother. However, the district court ordered supervised visitation only for the visits scheduled in April 1996, with future visitation to be addressed later. The order was clearly intended to be temporary. Without an explanation, the district court made that order permanent in July 1996. Furthermore, without explanation, the district court also ordered that Kevin's visitation with Brittany be supervised. The record does not support the district court's order requiring permanent supervised visitation.

[¶ 19] Similarly, there is nothing in the record explaining why Sharon and Brittany must travel to North Dakota for all of the visitation. North Dakota courts encourage visitation to foster the relationship between the child and the noncustodial parent. *Johnson v. Schlotman*, 502 N.W.2d 831, 834 (N.D. 1993). By requiring all visitation to occur in North Dakota, the district court has created a serious impediment in fostering the parties' relationships with their children. Visitation will likely be more difficult and less frequent because Sharon will be forced to uproot herself from her family to visit Brandon, and Brittany will be forced to leave school to see Brandon and Kevin. We do not understand why the district court placed all the burdens of visitation on Sharon. Although Brandon indicated he feared going to Missouri alone, the district court could have ordered Kevin to accompany Brandon to Missouri, just as

Sharon accompanies Brittany to North Dakota. If Kevin accompanies Brandon to Missouri, Brandon will be able to interact with Brittany and Sharon among their friends and family, knowing he will not be forced to stay in Missouri against his will. Additionally, Kevin will have an opportunity to visit with Brittany and participate in her Missouri life, if he wishes to do so. We, therefore, reverse the visitation order, instructing the district court to modify the visitation schedule allowing for more flexible and equitable visitation arrangements, perhaps in both states.

[¶ 20] Sharon next argues the district court erred by making her solely responsible for all the costs and arrangements for visitations. She contends that because the visitation order requires all visitation occur in North Dakota, she is forced to pay for airline or driving expenses, hotel fees, and other expenses, approximately five times a year. We have reversed the visitation order and instructed the district court to allow more flexible and equitable visitation. In revising its visitation order, the district court should also consider a more equitable distribution of the costs and burdens of visitation, or provide a satisfactory explanation for the present unequal distribution.

[¶ 21] Sharon next argues the court inappropriately relied on testimony from Brandon's psychologist, Dr. Schumacher. Sharon contends the court should not have been influenced by his testimony because Dr. Schumacher is partial to Kevin, has not interviewed Sharon, and is unaware that Brandon had been alienated from his mother and was suffering from "parental alienation syndrome."

[¶ 22] Dr. Schumacher is a licensed psychologist and Brandon's therapist. In *McDonough v. Murphy*, 539 N.W.2d 313, 318 (N.D.1995), a mother appealed the testimony of the child's psychologist, arguing it was tainted and unethical because he recommended a custodial placement without interviewing both sets of parents. In *McDonough*, we noted the frailty of a psychologist's testimony goes to the weight to be accorded the opinion, and not to its admissibility. *Id.* (citing *Weber v. Weber*, 512 N.W.2d 723 (N.D. 1994)). Similarly, in the instant case, any

bias Sharon alleges goes to the weight to be given Dr. Schumacher's testimony, not its admissibility. Dr. Schumacher's testimony was relevant and admissible, and the district court did not err by taking it into consideration. *McAdams*, 530 N.W.2d at 650 (noting it is the district court's responsibility to weigh the validity of the opinion); *Freed*, 454 N.W.2d at 518 (explaining the district court is in a much better position to ascertain the true facts because it had an opportunity to observe the demeanor and credibility of the witnesses).

[¶ 23] Finally, Sharon argues the district court erred by allowing Brandon's counsel to intervene. According to the record, in 1994, Brittany moved to intervene in the custody action after she had been declared unruly. Thereafter, she continued to be a party in the action. In 1995, Brandon sought intervention as well. Apparently without precedent in North Dakota, the trial court allowed both children to intervene in this divorce action.

[¶ 24] Before we discuss the district court's decision, we clarify there is a significant difference between allowing a person to be represented by counsel and allowing a party to intervene. Allowing a person to be represented by counsel merely ensures that a party has legal protection throughout the proceedings. Intervention, however, allows a person to become a full-fledged party in a proceeding, and thus gives them all the rights of a party, including, for example, the right to appeal. *Fisher v. Fisher*, 546 N.W.2d 354, 356 (N.D.1996). Here, it appears the district court only intended to allow the children to be represented by counsel, and did not actually intend that they have the rights of full, separate parties to this divorce. Nonetheless, the parties moved for intervention and the trial court granted it, and thus the issue is before us.

[¶ 25] We are reluctant to hold that a child should never be granted intervention in a custody action. Perhaps, under very rare, extraordinary circumstances, a child may need to become a party in a custodial case. Admittedly, this case evidences unusual circumstances. For example, the district

court determined Brittany was unruly without affording her the rights, benefits, and protections of juvenile court jurisdiction and procedure. However, that ruling and its legal consequences are long past. On appeal, it is apparent the "intervenors" did nothing more than echo the parents' briefs. Thus, even if intervention may have been appropriate at one time, we do not think it is appropriate any longer. We, therefore, order the intervention terminated. In the future, if intervention is ever found to be justified in a custodial setting, one parent should not be permitted to pay the entire costs for the intervening child's counsel, as was the case here. Sharing the costs between the parents will help ensure the child has independent counsel representing the child's interests, rather than the interests of one particular parent.

[¶ 26] We, therefore, affirm the custody order retaining custody of Brandon in Kevin, but reverse the visitation order requiring all visitation be supervised and in North Dakota. We further direct the district court terminate Brittany and Brandon's intervention.

[¶ 27] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.